# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

DAVID R. CORBIN,          )
                          )
          Plaintiff,     )
                          )
                          )
          v.           )      1:17cv129
                          )
JUDGE TALMADGE BAGGETT,   )
et al.,                 )
                          )
          Defendants.   )

## MEMORANDUM OPINION, ORDER, AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

This case comes before the Court on Plaintiff's Application to Proceed In Forma Pauperis (Docket Entry 1) in conjunction with his pro se Complaint (Docket Entry 2). For the reasons that follow, the Court will grant Plaintiff's instant Application for the limited purpose of recommending dismissal of this action under 28 U.S.C. § 1915(e)(2) as frivolous, for failing to state a claim, and as barred by various immunity doctrines.

## LEGAL STANDARD

"The federal *in forma pauperis* statute, first enacted in 1892 [and now codified at 28 U.S.C. § 1915], is intended to guarantee that no citizen shall be denied access to the courts solely because his poverty makes it impossible for him to pay or secure the costs." Nasim v. Warden, Md. House of Corr., 64 F.3d 951, 953 (4th

Cir. 1995) (en banc) (internal quotation marks omitted). "Dispensing with filing fees, however, [is] not without its problems. . . . In particular, litigants suing in forma pauperis d[o] not need to balance the prospects of successfully obtaining relief against the administrative costs of bringing suit." Nagy v. FMC Butner, 376 F.3d 252, 255 (4th Cir. 2004). To address this concern, the in forma pauperis statute provides that "the [C]ourt shall dismiss the case at any time if the [C]ourt determines . . . the action . . . (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2).

As to the first of these grounds, "a complaint, containing as it does both factual allegations and legal conclusions, is frivolous where it lacks an arguable basis either in law or in fact." Neitzke v. Williams, 490 U.S. 319, 325 (1989). "The word 'frivolous' is inherently elastic and not susceptible to categorical definition. . . . The term's capaciousness directs lower courts to conduct a flexible analysis, in light of the totality of the circumstances, of all factors bearing upon the frivolity of a claim." Nagy, 376 F.3d at 256–57 (some internal quotation marks omitted). In determining frivolousness, the Court may "apply common sense." Nasim, 64 F.3d at 954.

-2-

As to the second ground, a plaintiff "fails to state a claim on which relief may be granted," 28 U.S.C. § 1915(e)(2)(B)(ii), when the complaint does not "contain sufficient <u>factual matter</u>, accepted as true, to 'state a claim to relief that is plausible on its face.'" <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (emphasis added) (quoting <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007)). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of "entitlement to relief."'" <u>Id.</u> (quoting <u>Twombly</u>, 550 U.S. at 557). This standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." <u>Id.</u> In other words, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." <u>Id.</u>[1]

---

[1] Although "[a] document filed *pro se* is to be liberally construed and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers," <u>Erickson v. Pardus</u>, 551 U.S. 89, 94 (2007) (citation and internal quotation marks omitted), the United States Court of Appeals for the Fourth Circuit has "not read *Erickson* to undermine *Twombly*'s requirement that a pleading contain more than labels and conclusions," <u>Giarratano v. Johnson</u>, 521 F.3d 298, 304 n.5 (4th Cir. 2008) (internal quotation marks omitted) (dismissing pro se complaint); <u>accord</u> <u>Atherton v. District of Columbia Office of Mayor</u>, 567 F.3d 672, 681-82 (D.C. Cir. 2009) ("A *pro se* complaint . . . 'must be held to less stringent standards than formal pleadings drafted by lawyers.' But even a *pro se* complainant must plead 'factual matter' that permits the court to infer 'more than

The third ground for dismissal under 28 U.S.C. § 1915(e)(2)(B) generally applies to situations in which doctrines established by the United States Constitution or at common-law immunize government entities and/or government personnel from liability for damages. See, e.g., Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89 (1984) (discussing eleventh-amendment immunity of states and state officials); Pierson v. Ray, 386 U.S. 547 (1967) (describing interrelationship between 42 U.S.C. § 1983 and common-law immunity doctrines); cf. Allen v. Burke, 690 F.2d 376, 379 (4th Cir. 1982) (noting that, even where "damages are theoretically available under [certain] statutes . . ., in some cases, immunity doctrines and special defenses, available only to public officials, preclude or severely limit the damage remedy" (internal quotation marks omitted)).

## DISCUSSION

Plaintiff initiated this action against five defendants: (1) "Judge Talmadge Baggett" ("Judge Baggett"), (2) "Billy West, District Attorney of Cumberland County" ("DA West"), (3) "Williford Law Firm," (4) "Ellen Hancock, Trial Court Administrator" ("TCA Hancock"), and (5) "Christa Baker, Trial Court Administrator" ("TCA Baker," and collectively with Judge Baggett, DA West, Williford Law Firm, and TCA Hancock, the "Defendants"). (Docket Entry 2 at 1.)

---

the mere possibility of misconduct.'" (first quoting Erickson, 551 U.S. at 94; then quoting Iqbal, 556 U.S. at 679)).

-4-

Plaintiff seeks relief from each Defendant "in the form of formal acknowledgment of wrongdoing" and $25,000,000.00 in damages for allegedly violating his civil rights (and/or engaging in a conspiracy to violate his civil rights) under 18 U.S.C. §§ 242 and 245. (Id. at 2-3.)

As an initial matter, neither of the statutes that Plaintiff alleges Defendants violated (i.e., 18 U.S.C. §§ 242 & 245) provides a private cause of action. See Robinson v. Overseas Military Sales Corp., 21 F.3d 502, 511 (2d Cir. 1994) (describing 18 U.S.C. § 242 as a "criminal statute[] that do[es] not provide [a] private cause[] of action"); Dugar v. Coughlin, 613 F. Supp. 849, 852 n.1 (S.D.N.Y. 1985) (concluding that, although 18 U.S.C. §§ 242 & 245 "relate to deprivation of civil rights, . . . there is no private right of action under [either] statute[]"). However, a private cause of action for deprivations of constitutionally protected rights arises under 42 U.S.C. § 1983,[2] and a private cause of

---

[2] Entitled "Civil Action for Deprivation of Rights," this statute provides, in relevant part, that

> [e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity,

-5-

action for conspiratorial conduct in furtherance of the deprivation of constitutionally protected rights generally arises under 42 U.S.C. § 1985.[3]  In any event, Plaintiff's Complaint must provide sufficient factual matter regarding the deprivation of constitutionally protected rights.  See Iqbal, 556 U.S. at 666 (observing that a plaintiff must "plead factual matter that, if taken as true, states a claim that [defendants] deprived him of his . . . constitutional rights").

---

injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable.

42 U.S.C. § 1983.

[3] Section 1985 contains three parts, see 42 U.S.C. § 1985(1)-(3), but only part (3) could apply in this case.  First, "Section 1985(1) prohibits conspiracies to prevent individuals from holding office or discharging official duties." Stankowski v. Farley, 251 F. App'x 743, 747 n.1 (3d Cir. 2007).  Meanwhile, Section 1985(2) addresses acts, in state court proceedings, involving "force, intimidation, or threat" against witnesses or jurors.  42 U.S.C. § 1985(2); see also Stankowski, 251 F. App'x at 747 n.1 ("Section 1985(2) prohibits conspiracies to prevent witnesses from testifying in court, injuring witnesses who have testified, or attempting to influence or injure grand or petit jurors.").  The Complaint contains no allegations that would state a claim for relief under either Section 1985(1) or (2), in light of the foregoing standards. (See Docket Entry 2.)  Therefore, in order to state a claim for conspiratorial conduct that caused a deprivation of Plaintiff's constitutionally protected rights, Plaintiff must proceed under Section 1985(3), which requires a showing of "(1) a conspiracy of two or more persons, (2) who are motivated by a specific class-based, invidiously discriminatory animus to (3) deprive the plaintiff of the equal enjoyment of rights secured by the law to all, (4) and which results in injury to the plaintiff as (5) a consequence of an overt act committed by the defendants in connection with the conspiracy." Simmons v. Poe, 47 F.3d 1370, 1377 (4th Cir. 1995).

-6-

Regarding the alleged violations of Plaintiff's civil rights, the Complaint alleges that Judge Baggett, TCA Hancock, and TCA Baker work as officials with the North Carolina judiciary, and that DA West serves as the District Attorney of Cumberland County, North Carolina. (See Docket Entry 2 at 2-3.) Judge Baggett, TCA Hancock, TCA Baker, and DA West (collectively, the "State Defendants") therefore qualify as North Carolina state officials. (See id.)

"[A] suit for damages against a state official in his official capacity is actually a suit against his office and, thus, the State." Eller v. Kaufman, No. 2:11CV31, 2012 WL 3018295, at *8 (W.D.N.C. July 24, 2012) (citing Will v. Michigan Dep't of State Police, 491 U.S. 58, 71 (1989)). "[A]bsent waiver by the State or valid congressional override, the Eleventh Amendment bars a damages action against a State in federal court. This bar remains in effect when State officials are sued for damages in their official capacity." Kentucky v. Graham, 473 U.S. 159, 169 (1985) (footnote and citation omitted).

Sections 1983 and 1985 provide for suits against a "person," not a state. See 42 U.S.C. §§ 1983 & 1985. Thus, "Congress did not exercise its power to abrogate a state's Eleventh Amendment immunity when it enacted 42 U.S.C. §[§] 1983 [& 1985]." Coffin v. South Carolina Dep't of Soc. Servs., 562 F. Supp. 579, 585 (D.S.C. 1983) (ruling that, "just as neither [the state agency defendant]

-7-

nor the Board as *alter egos* of the state is a 'person' within the meaning of 42 U.S.C. § 1983, neither one is a 'person' within the meaning of 42 U.S.C. §§ 1985 and 1986").

Given these points, to the extent the Complaint asserts official capacity claims against State Defendants, those claims fail as frivolous because a suit against State Defendants in their official capacity constitutes a suit against North Carolina, and the term "person" under Sections 1983 and 1985 does not encompass North Carolina. See <u>Woodward v. Chautauqua Cty.</u>, No. 15-CV-246, 2016 WL 4491712, at *2 (W.D.N.Y. July 5, 2016) (concluding that "[n]either a state agency nor a state officer acting in his official capacity is subject to suit under 42 U.S.C. § 1983[ and] § 1985" (citing <u>Posr v. Court Officer Shield No. 207</u>, 180 F.3d 409 (2d Cir. 1999))), <u>recommendation adopted</u>, 2016 WL 4475044, at *1 (W.D.N.Y. Aug. 25, 2016); <u>see also</u> <u>Puckett v. Carter</u>, 454 F. Supp. 2d 448, 452 (M.D.N.C. 2006) ("The Court of Appeals for the Fourth Circuit has specifically held that the Eleventh Amendment bars claims brought in federal court against state district attorneys in their 'official' capacity." (citing <u>Nivens v. Gilchrist</u>, 444 F.3d 237, 249 (4th Cir. 2006)).

## I. Judge Baggett

Turning to the Complaint's specific allegations against each Defendant, the Complaint first asserts that "[Judge] Baggett, in

-8-

conspiracy to violate [Plaintiff's] civil rights and [with] intent to cause bodily harm used his influence on the bench to intimidate [Plaintiff] to drop [his] case and accused [Plaintiff] of being mental[ly] incompetent." (Docket Entry 2 at 2.) The Complaint next alleges that Judge Baggett "has been influenced by the District Attorney's Office, The Fayetteville Police Department, and The Cumberland County Sheriff's Department, The North Carolina State Highway Patrol, The Federal Bureau of Investigations [sic] and various other agencies." (Id.) The Complaint further states that "Judge Baggett did not allow [Plaintiff] to present [his] case and he stated[,] 'I am only going to go by what the state highway patrol has written'" and "that the officers would be justified in shooting [Plaintiff]." (Id.)[4]

Notably, the Complaint does not contain any factual content reflecting that Judge Baggett engaged in a "conspiracy" to violate Plaintiff's rights, but instead contains only the conclusory assertion that various agencies "influenced" Judge Baggett without explaining how that influence harmed Plaintiff. The Complaint also fails to explain how Judge Baggett's accusations or statements violated Plaintiff's "civil rights." Simply put, the Complaint's

---

[4] The Complaint identifies by case number various cases involved in Defendants' alleged misconduct, but provides no further details regarding those cases. (See, e.g., Docket Entry 2 at 2 ("The cases involved are 15CR056756, 15CR053333, and 15CVD5128.").)

bare assertions do not provide enough factual matter to state a claim against Judge Baggett.

Moreover, even if the Complaint had stated a plausible claim against Judge Baggett, judicial immunity would prevent liability. In that regard, the Complaint alleges that Judge Baggett serves as a North Carolina state-court judge and presided over Plaintiff's civil and/or criminal "case." (Id. at 2.)[5] "Judges performing judicial acts within their jurisdiction are entitled to absolute immunity from civil liability claims," In re Mills, 287 F. App'x. 273, 279 (4th Cir. 2008) (emphasis added), "even if such acts were allegedly done either maliciously or corruptly," King v. Myers, 973 F.2d 354, 356 (4th Cir. 1992) (citing Pierson, 386 U.S. at 554). See also Mireles v. Waco, 502 U.S. 9, 11 (1991) (stating that "judicial immunity is an immunity from suit, not just from ultimate assessment of damages"). To determine whether an action constitutes a "judicial act" protected by judicial immunity, the Court must consider "whether the function is one normally performed by a judge, and whether the parties dealt with the judge in his or her judicial capacity." King, 973 F.2d at 357. Thus, a plaintiff can overcome the judicial immunity bar only if the judge's "actions

_____

[5] A review of public records reveals that the Honorable Talmage S. Baggett, Jr. serves as a North Carolina District Court Judge in Fayetteville, North Carolina. See The North Carolina Court System, Judicial Employee Detail, http://www1.aoc.state.nc.us/juddir/employee/display.do?action=view&primaryKey=14227937 (last visited March 16, 2017).

-10-

were non-judicial or the actions were judicial but were taken without jurisdiction." Evans v. Downey, No. 1:15-CV-117, 2016 WL 3562102, at *2 (W.D. Ky. June 24, 2016) (citing Mireles, 502 U.S. at 13).

Here, the Complaint does not allege that Judge Baggett lacked jurisdiction in presiding over Plaintiff's case. (See Docket Entry 2 at 1-3). Further, even though Judge Baggett's judicial actions allegedly involved conspiratorial communications with various agencies and/or denial of Plaintiff's right to present his case, judicial immunity still applies. See King, 973 F.2d at 356 (ruling that judicial immunity attaches even where a judge's actions qualify as malicious or corrupt); see also Mikhail v. Kahn, 991 F. Supp. 2d 596, 660 (E.D. Pa. 2014) (holding that "[j]udges are absolutely immune from suit" for money damages arising from their judicial acts, even if such acts took "place *ex parte* and without notice or a hearing" (internal quotation marks omitted)). Accordingly, Judge Baggett enjoys absolute judicial immunity in this action. See Harry v. Lauderdale Cty., 212 F. App'x 344, 346-47 (5th Cir. 2007) (affirming dismissal of the plaintiff's claims against state-court judge because judicial immunity barred liability).

For all these reasons, the Court should dismiss with prejudice the Complaint against Judge Baggett.

-11-

## II. TCA Hancock

With regard to Plaintiff's claims against TCA Hancock, the Complaint first asserts (1) that TCA Hancock "manipulated the paperwork submitted to the court in various cases [that] the Plaintiff has submitted to the courts in Cumberland County," and (2) that "[P]laintiff never received any paperwork submitted by the defendants and was held to a tougher set [of] rules than the defendants." (Docket Entry 2 at 3.) The Complaint next alleges that "[TCA] Hancock misused her position as the Trial [C]ourt Administrator and often scheduled hearings without notifying the [P]laintiff so that he would not have a chance to participate in the cases and because of this the cases would be dismissed." (Id.) Finally, the Complaint states that TCA Hancock "instruct[ed] one of her clerks to act as a lawyer in order to manipulate cases and have them dismissed," and that "[s]he has not acted in good faith to let the process of the law take its course." (Id.)

Regarding the allegations that TCA Hancock and/or her clerks manipulated cases, the Complaint fails to describe how that manipulation negatively impacted Plaintiff, his cases, or his constitutionally protected rights. As to the allegation that Plaintiff did not receive "any paperwork submitted by the defendants," the Complaint fails to assert that TCA Hancock maintained the responsibility of providing such paperwork to Plaintiff. With respect to the allegation that Plaintiff "was held

-12-

to a tougher set [of] rules than the defendants," the Complaint again fails to provide any factual matter to show that such conduct violated Plaintiff's rights. Lastly, with regard to the allegation that TCA Hancock scheduled hearings without notifying Plaintiff, leading to the dismissal of his cases, again the Complaint provides no factual matter describing the nature of the dismissed cases or motivation behind such alleged conduct. See Iqbal, 556 U.S. at 678 ("Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." (internal quotation marks omitted)).

In any event, even if the Complaint alleged a plausible claim against TCA Hancock, she enjoys immunity from liability in this case. Such immunity exists "due to the danger that disappointed litigants, blocked by the doctrine of absolute immunity from suing the judge directly, will vent their wrath on clerks, court reporters, and other judicial adjuncts." Ward v. Plymale, Civ. Action No. 3:12-6186, 2013 WL 6164277, at *19 (S.D. W. Va. Nov. 25, 2013) (internal quotation marks omitted). This "immunity extends to those persons performing tasks so integral or intertwined with the judicial process that these persons are considered to be figurative arms of the very commanding judge who is immune." Shelton v. Wallace, 886 F. Supp. 1365, 1371 (S.D. Ohio 1995); see also Jackson v. Houck, 181 F. App'x 372, 373 (4th Cir. 2006)

-13-

("Absolute immunity applies to all acts of auxiliary court personnel that are basic and integral parts of the judicial function." (brackets and internal quotation marks omitted)).

Here (as detailed above), each of the Complaint's allegations against TCA Hancock involve her conduct as a Trial Court Administrator. As a result, TCA Hancock engaged in the alleged misconduct in her capacity as an officer of the court, such that judicial immunity applies. See, e.g., Sivak v. Dennard, No. 90-35824, 951 F.2d 362 (Table), 1991 WL 275338, at *1 (9th Cir. Dec. 24, 1991) ("Court administrators enjoy immunity from liability for actions that are part of their ministerial duties." (citing Morrison v. Jones, 607 F.2d 1269, 1273 (9th Cir. 1979))); Donaldson v. Williams, No. 2:12-CV-80, 2012 WL 5398307, at *11 (D. Or. Sept. 6, 2012) (recommending dismissal of the plaintiff's claims against the trial court administrator as barred by quasi-judicial immunity), recommendation adopted, 2012 WL 5398217, at *1 (D. Or. Nov. 2, 2012) (noting that, "[b]ecause of the immunity afforded to . . . trial court administrators, . . . [the p]laintiff's claims are dismissed with prejudice as to [the trial court administrator]"); see also Medinger v. City of Ashland, No. 1:11-CV-470, 2012 WL 1849667, at *5 (D. Or. May 17, 2012) (ruling that "[t]he fact that [the trial court administrator] allegedly failed to file the judgment," which his job required, "does not establish that such omission was outside the scope of his duties," but

-14-

instead "may indicate that he failed to properly perform the tasks associated with his duties," and holding that eleventh-amendment immunity thus applies to bar the plaintiff's claim against the trial court administrator).

In summary, the Court should dismiss with prejudice the Complaint against TCA Hancock.

### III.  TCA Baker

With respect to Plaintiff's claims against TCA Baker, the Complaint asserts that TCA Baker "manipulated the paperwork of cases that were filed in Greenville, Wilmington and Raleigh NC," used her influence to go "before the judge without notifying the [P]laintiff," and set hearings "without notifying [Plaintiff] so that [his] cases would be dismissed."  (Docket Entry 2 at 3.)  The Complaint further alleges that the "Plaintiff never received any paperwork that was allegedly submitted by the defendants," and that TCA Baker "has not acted in good faith as she did not [let] the process of the law take place."  (Id.)

The Complaint's allegations that TCA Baker "manipulated the paperwork of cases" filed in various forums, used her influence to go "before the judge without notifying the [P]laintiff," failed to provide Plaintiff "paperwork that was allegedly submitted by the defendants," and did not act "in good faith" to allow "the process of the law take place" (id.), all represent legal conclusions with no supporting factual matter necessary to establish a claim for

-15-

relief. By way of example, though the Complaint asserts that TCA Baker "manipulated the paperwork" in Plaintiff's various cases, the Complaint fails to describe how that manipulation negatively affected Plaintiff's cases. Further, the Complaint does not explain why TCA Baker, as a trial court administrator, could not communicate with a judge outside of Plaintiff's presence, or how such communication would qualify as a violation of Plaintiff's rights. Moreover, the Complaint does not establish that TCA Baker bore any responsibility to provide Plaintiff with any paperwork, and lacks allegations showing how any of TCA Baker's alleged conduct prevented "the process of the law" from taking place. With regard to the allegations that TCA Baker scheduled hearings without notifying Plaintiff, the Complaint provides no factual matter to support that conclusory assertion. See Iqbal, 556 U.S. at 678 (noting that a complaint does not "suffice if it tenders naked assertions devoid of further factual enhancement" (brackets and internal quotation marks omitted)).

Regardless, even if the Complaint stated a claim against TCA Baker, for the reasons explained in Section II above, quasi-judicial immunity precludes such claims, as each of the Complaint's allegations against TCA Baker (described in the preceding paragraph) involve tasks she performed (or failed to perform) as a trial court administrator. See Black v. Haselton, Nos. 3:12-CV-2213, 3:12-CV-2221, 2:12-CV-2222, 2014 WL 494871, at *1, 4 (D. Or.

-16-

Feb. 4, 2014) (dismissing claims against trial court administrator with prejudice because, "under absolute quasi-judicial immunity, court personnel whose challenged activities are an integral part of the judicial process are immune from liability" (internal quotation marks omitted)); see also Ward, 2013 WL 6164277, at *19 (collecting cases on immunity of court clerks).

Under these circumstances, the Court should dismiss with prejudice the Complaint against TCA Baker.

## IV. DA West

Turning next to Plaintiff's claims against DA West, the Complaint asserts that DA West "in conspiracy with The Williford Law Firm, The Fayetteville [Police] Department, The Cumberland County Sheriff's Department, The State Highway Patrol, The Federal Bureau Of Investigations [sic] and various other agencies has violated [Plaintiff's] rights." (Docket Entry 2 at 2.) The Complaint next alleges that DA West "used his influence and instructed his employees to use the system to violate [Plaintiff's] civil rights and use the intent to cause bodily harm." (Id.) Further, the Complaint states that DA West's office "destroyed court documents and falsified records. In doing this, The Williford Law Firm used another firm's name to have the Cumberland County Sheriff Department to come to [Plaintiff's] house with guns drawn to take money and stolen goods away from [Plaintiff's] home. They have not acted in good faith because they allowed the

[P]laintiff to believe that their firm was The Hall Firm and not The Williford Firm." (Id.)

Importantly, the Complaint does not provide: (1) factual matter showing the existence of a conspiracy involving DA West, (2) any details regarding the allegedly destroyed or falsified court documents and records, including their significance as to Plaintiff, (3) a description of how DA West's alleged wrongdoing violated Plaintiff's rights, or (4) any link between DA West and Williford Law Firm's use of another firm's name "to have the Cumberland County Sheriff Department" take action against Plaintiff. In short, the Complaint's allegations against DA West qualify as the exact type of "unadorned, the-defendant-unlawfully-harmed-me accusation[s]" that the Supreme Court has held insufficient to state a plausible claim for relief. Iqbal, 556 U.S. at 678.

Moreover, DA West may also enjoy immunity from liability in this case. In that regard, the United States Supreme Court has held that "absolute immunity appl[ies] with full force" to a prosecutor's activities that remain "intimately associated with the judicial phase of the criminal process." Imbler v. Pachtman, 424 U.S. 409, 430 (1976). Thus, "in initiating a prosecution and in presenting the State's case, the prosecutor is immune from a civil suit for damages." Id. at 431; see also Polidi v. Bannon, ___ F. Supp. 3d ___, ___, 2016 WL 8135476, at *5 (E.D. Va. Dec. 28, 2016)

-18-

("Prosecutors are absolutely immune from suits for money damages for conduct in or connected with judicial proceedings."); but see Buckley v. Fitzsimmons, 509 U.S. 259, 273 (1993) ("A prosecutor's administrative duties and those investigatory functions that do not relate to an advocate's preparation for the initiation of a prosecution or for judicial proceedings are not entitled to absolute immunity.").

Because the narrow exception to absolute prosecutorial immunity conceivably could apply (depending on the nature of any additional factual allegations Plaintiff chose to present in a subsequent action), the Court should dismiss the Complaint's individual capacity claims against DA West under 28 U.S.C. § 1915(e)(2)(B)(ii) for failing to state a claim, but without prejudice.

## V. Williford Law Firm

With respect to Plaintiff's claims against Williford Law Firm, the Complaint asserts that "Williford Law Firm . . ., in conspiracy with [DA West], The Fayetteville Police Department, The Cumberland County Sheriff's Department, The North Carolina State Highway Patrol, The Federal Bureau of Investigations [sic] and various other agencies have conspired to violate [Plaintiff's] civil rights and they have intent to do bodily harm." (Docket Entry 2 at 2.) The Complaint next alleges that a conflict of interest exists because a member of Williford Law Firm serves as legal counsel for

-19-

the listed agencies and "employs a lot of persons previously employed by [DA West]." (Id.)  Finally, the Complaint states that "[t]here ha[s] also been instances of falsified documents and destruction of court documents.  In doing this[,] The Williford Law Firm used another law firm's name to have The Cumberland County Sheriff Department to come to [Plaintiff's] house with guns drawn to take money and stolen goods from [Plaintiff's] home.  The Williford Law Firm has not acted in good faith because they allowed the [P]laintiff to believe that they were The Hall Law Firm." (Id.)

Conspicuously, the Complaint lacks any factual matter supporting Plaintiff's conclusory claim of a conspiracy, and additionally lacks any details regarding how Williford Law Firm's alleged misconduct deprived Plaintiff of his "civil rights."  For example, the Complaint does not explain (1) the role, if any, Williford Law Firm played in allegedly falsifying documents, (2) the significance of such documents, or (3) how Williford Law Firm allegedly violated Plaintiff's "civil rights" by using another law firm's name to have law enforcement officers "take money and stolen goods from [Plaintiff's] home."  (See Docket Entry 2 at 1-3.)  In short, the Complaint, at best, asserts a claim that remains "merely consistent with" Williford Law Firm's liability for some amorphous wrong.  Twombly, 550 U.S. at 557.

In addition, Section 1983 claims require "state action," Hall
v. Quillen, 631 F.2d 1154, 1155 (4th Cir. 1980), and here, the
Complaint does not set forth factual matter showing that Williford
Law Firm acted under color of state law (see Docket Entry 2 at 2).
See also American Mfrs. Mut. Ins. Co. v. Sullivan, 526 U.S. 40, 50
(1999) (holding that Section 1983's under-color-of-state-law
requirement "excludes from its reach merely private conduct, no
matter how discriminatory or wrongful" (internal quotation marks
omitted)). Notably, with regard to Plaintiff's assertion that
Williford Law Firm engaged in a conspiracy to cause him harm, the
Complaint's "[a]llegations of parallel conduct and a bare assertion
of a conspiracy are not enough for a claim to proceed" under
Section 1985(3). Thomas v. The Salvation Army S. Territory, 841
F.3d 632, 637 (4th Cir. 2016) (internal quotation marks omitted).
Further, Section 1985(3) requires that Plaintiff plead that two or
more individuals, "motivated by a specific class-based, invidiously
discriminatory animus," deprived him of his equal enjoyment of
rights secured by the law. Id. (internal quotation marks omitted).
The Complaint contains no such allegations. (See Docket Entry 2 at
1-3.)

Accordingly, the Court should dismiss the Complaint against
Williford Law Firm for "fail[ing] to state a claim on which relief
may be granted," 28 U.S.C. § 1915(e)(2)(B)(ii), but without

prejudice, in the event Plaintiff possesses a good-faith basis to present additional allegations in a new action.

## IMPROPER VENUE

As a final matter, it appears that Plaintiff has filed this action in an improper venue. Pursuant to 28 U.S.C. § 1391(b), a plaintiff may bring a civil action in:

> (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located; (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

28 U.S.C. § 1391(b).

Under Section 1391(b)(1), although Defendants evidently reside in North Carolina (see Docket Entry 2 at 2-3 (noting the Defendants' ties to Cumberland County and/or to various cities in the Eastern District of North Carolina)), nothing in the Complaint suggests that any of the Defendants reside in the Middle District of North Carolina (see id. at 1-3). Therefore, Section 1391(b)(1) likely does not apply.

As concerns Section 1391(b)(2), a "substantial part of the events or omissions giving rise" to Plaintiff's claims appear to have occurred in the Eastern District of North Carolina and nothing in the Complaint suggests that any of the relevant acts or

-22-

omissions occurred in this District.  (See id.)  Venue thus may lie in the Eastern District of North Carolina under Section 1391(b)(2), but likely not in this Court.  Similarly, Section 1391(b)(3) would not apply given that Plaintiff could, at a minimum, have filed the Complaint in the Eastern District of North Carolina.

Although it seems likely that Plaintiff filed this case in the wrong district, the venue issue remains sufficiently unclear that the Court did not transfer the case at the screening stage.  See, e.g., Trujillo v. Williams, 465 F.3d 1210, 1217 (10th Cir. 2006) (ruling that sua sponte transfer or dismissal not proper except where facts in complaint clearly invite defense); see also Feller v. Brock, 802 F.2d 722, 729 n.7 (4th Cir. 1986) (requiring opportunity for parties to be heard before transfer decision).  Nevertheless, if Plaintiff elects to file any subsequent action pertaining to these events in this District, he should allege enough facts for the Court to assess the propriety of venue.

## CONCLUSION

To summarize, (1) the Complaint fails to state a claim for relief against any defendant under the pleading standard set forth in Twombly and Iqbal, (2) various immunity doctrines bar Plaintiff's claims against Judge Baggett, TCA Hancock, and TCA Baker in both their official and individual capacities, (3) to the extent the Complaint asserts official capacity claims against DA West, eleventh-amendment immunity bars such claims, (4)

-23-

prosecutorial immunity could bar Plaintiff's claims against DA West in his individual capacity, and (5) it appears Plaintiff filed this action in an improper venue.

**IT IS THEREFORE ORDERED** that Plaintiff's Application to Proceed In Forma Pauperis (Docket Entry 1) is **GRANTED** for the limited purpose of considering this recommendation of dismissal.

**IT IS RECOMMENDED** that Plaintiff's claims against Judge Baggett, TCA Hancock, and TCA Baker be dismissed with prejudice as barred by various immunity doctrines.

**IT IS FURTHER RECOMMENDED** that Plaintiff's official capacity claims against DA West be dismissed with prejudice under the doctrine of eleventh-amendment immunity.

**IT IS FURTHER RECOMMENDED** that Plaintiff's individual capacity claims against DA West, as well as Plaintiff's claims against Williford Law Firm, be dismissed without prejudice to re-filing with sufficient supporting factual matter in the proper forum.

/s/ L. Patrick Auld
**L. Patrick Auld**
**United States Magistrate Judge**

March 30, 2017

-24-